McDOWELL v. RAMBO et al.—111 S. W. (2d) 892.

Middle Section. August 14, 1937.

Petition for Certiorari denied by Supreme Court, Dec. 17, 1937.

450

Lawson Myers, of Fayetteville, for appellant Rambo.
W. B. Lamb, Jr., of Fayetteville, for appellee Hines' Estate.
B. E. Holman, of Fayetteville, for appellee receiver.

FAW, P. J.   John D. McDowell, in his capacity as receiver of the Farmers National Bank of Fayetteville, Tenn., brought this suit by original bill filed in the chancery court of Lincoln county on July 19, 1935, against Frank D. Rambo and Walter J. Hines, both resident citizens of Lincoln county, Tenn., to recover of the defendants the sum of $675, with interest thereon from the 16th day of August, 1934, as and for an assessment of 45 per cent of the par value ($1,500) of 15 shares of the capital stock of said Farmers National Bank.

It is, in substance, alleged in complainant's bill, and is shown by undisputed proof, that, during the period covered by the transactions involved in this case, the aforesaid Farmers National Bank was a national banking corporation, duly chartered, organized, and existing under the laws of the United States, with its banking house and principal place of business in the town of Fayetteville, Lincoln county, Tenn.; that complainant, John D. McDowell is the duly appointed, qualified, and acting receiver of said Farmers National Bank, by appointment of the Comptroller of the Currency of the United States, which appointment was made on April 16, 1934, because of the insolvency of said bank; that, on July 9, 1934, the Comptroller of the Currency, by virtue of the laws of the United States applicable in the premises, made an assessment and demand upon each and all of the shareholders of said bank of and for 45 per cent of the par value of each and every share of the capital stock of said bank held or owned by said shareholders, respectively, said assessment to be paid by said shareholders on or before the 16th day of August, 1934.

The further allegations of complainant's bill on which he seeks to obtain judgment against the two defendants are as follows:

"That heretofore, to-wit, on November 3, 1932, and for some time prior thereto, the defendant Walter J. Hines was the owner of a certificate of capital stock in said The Farmers National Bank, of Fayetteville, to the amount of twenty-five shares, of the par value of One Hundred ($100.00) Dollars, each, the same having been acquired by him on January 26, 1931, being certificate No. 298, and which stock he continued to have and hold in said Bank, from January 26, 1931, to Nov. 3, 1932, when said certificate of stock was brought by said Walter J. Hines, to the said The Farmers National Bank of Fayetteville, and fifteen shares thereof, of the par value of One Hundred ($100.00) Dollars, each, and of the total value of Fifteen Hundred ($1,500.00) Dollars, was transferred to one

Sadie Frances Buchanan, a minor, under the age of twenty-one years. That the said Walter J. Hines, at the time said transfer was made of the fifteen shares of said stock to the said Sadie Frances Buchanan, minor, surrendered the certificate numbered 298, for twenty-five shares, of the par value of One Hundred ($100.00) Dollars, each, and fifteen shares of the par value of One Hundred Dollars ($100.00) each, thereof—being certificate No. 311,—was thus issued in the name of the said Sadie Frances Buchanan, in which name and manner said stock now appears to be entered on the books of said Bank, and the way and manner in which the same appeared at the time your Complainant took charge of the stock books and records of said Bank, as Receiver thereof. . . .

"That immediately after said order by the Comptroller of the Currency, your Complainant, in accordance with the above order, and in obedience thereto, undertook the collection from all shareholders of said Bank, the assessment so made against their shares of stock respectively to the extent of 45% of the par value of each and every share of the stock held by each and all of the shareholders of said Bank, and has largely been able to make the collections to the extent of said assessment against the shares in the hands of the various shareholders at the time of the closing of said Bank, and has sought to make the collection of 45% assessed as against the fifteen shares of stock formerly belonging to the said Walter J. Hines, and by the records of said Bank shown to have been transferred to the said Sadie Frances Buchanan, a minor, but has so far been unable to make any collection as to said fifteen shares of stock or the assessment against the same. That the said Walter J. Hines claims that he should not be required or called on to pay said assessment, notwithstanding that he had transferred the stock apparently as shown by the records of the Bank, to a minor, by said name of Sadie Frances Buchanan, who by reason of her minority, could not be charged with the liability of assessment against her under the law, for the reason that he states that he traded or sold said fifteen shares of stock on or prior to November 3, 1932, to the defendant Frank D. Rambo, in a certain trade for an automobile, the said Frank D. Rambo being in the business of selling automobiles, in the town of Fayetteville, Tennessee,—the said Walter J. Hines stating that he had sold said stock or traded it in as a payment on an automobile so purchased of the said Frank D. Rambo, and that the said Frank D. Rambo caused or directed him to have the stock transferred into the name of Sadie Frances Buchanan, a niece of his, and a minor, and that therefore, by reason thereof, that the said assessment should be paid in fact by Frank D. Rambo, being impossible to hold the said Sadie Frances Buchanan, a minor, responsible for said assessment, by reason of her minority.

"That both the said Walter J. Hines, and Frank D. Rambo, are

abundantly solvent and responsible for their obligations, but neither one of these Defendants is willing to make payment of the assessment so made as against said shares of stock, each insisting that any responsibility rests wholly upon the other, but neither denying the right of your Complainant, by reason of the facts herein alleged, to make said collection from one or the other of them, but each insisting that the liability as between themselves, be paid by the other.

"Your Complainant verily believes and charges that both of the Defendants are in fact liable for said assessment, the said Walter J. Hines being liable because of transferring or permitting to be transferred said stock from himself into the name of a minor, without legal liability, or responsibility for the individual liability of a shareholder, by reason of her minority, for the assessment that might be made, or that was entitled to be made in the event of insolvency of said Bank, against the various shareholders thereof; and likewise that the said Frank D. Rambo is responsible for said assessment because of having purchased said stock and having directed it to be transferred into the name of his niece, the said Sadie Frances Buchanan, a minor, and therefore that Complainant has a right to look to both of the defendants for the payment of said assessment, not however, denying the right of said Defendants as between themselves, to seek in Your Honor's Court to have such decree entered therein as will direct and fix the liability of the defendants as between themselves; that is, as to which should first or primarily be liable for the payment of said assessment as against the other, and being wholly unable to get the said defendants or either of them to pay by reason of the contention between themselves, as to the liability as between themselves for the payment of said assessment, your Complainant has been ordered as Receiver of said Bank to bring this suit in Your Honor's Court for the purpose of recovering the assessment made against said stock."

Each of the defendants filed a separate answer to complainant's bill, and filed his answer as a cross-bill. Each denied that he was liable to judgment for an assessment as a shareholder in said bank for any sum whatever, and set forth in detail his contentions with respect to the ownership and transfer of the 15 shares of stock involved in this case.

Defendant Rambo, as cross-complainant, prayed that, in the event he should be held liable to the complainant for any amount on said assessment, he have a judgment against his codefendant Hines for such amount as he (Rambo) may be required to pay complainant.

Defendant Hines, as cross-complainant, prayed that, if the court should be of the opinion that there is liability to the original complainant, both on the part of himself and his codefendant Rambo, that a decree be entered directing and providing that said Rambo

is primarily liable, and directing that he (Rambo) pay such judgment in full; and that if he (Hines) have paid any portion of any judgment or decree against him in this cause, then that a judgment and decree be entered herein against defendant Rambo for the amount so paid by him (Hines), together with costs.

Hines answered the cross-bill of Rambo and Rambo answered the cross-bill of Hines. We think it is sufficient for present purposes to say that these answers make an issue between Hines and Rambo —Hines insisting that he sold the 15 shares of stock in question to Rambo, and that it was by Rambo's direction that the stock was issued to Rambo's minor niece; and Rambo admitting that he traded an automobile to Hines, but asserting that he did not want to own the stock, and did not own it, and that he stated to Hines that he "was willing to conclude the trade for the automobile upon the condition only that the said cross-complainant (Hines) transfer the stock to Sadie Frances Buchanan."

So far as appears from the record, the complainant receiver was not served with process under the cross-bills of the defendants, and he filed no answer to either of said cross-bills.

Proof by depositions on behalf of complainant and each of the defendants, respectively, was taken and filed, and the cause was thereafter heard by Judge Smartt, sitting by interchange with Chancellor Lytle, and a final decree was entered on May 25, 1936, in which (after finding the undisputed facts we have hereinbefore stated with reference to the receivership, the assessment against shareholders, etc.), the court found and decreed as follows:

"That on Nov. 3, 1932, and for sometime prior thereto the defendant Walter J. Hines was the owner of a certificate of capital stock of said The Farmers National Bank of Fayetteville, to the amount of twenty-five (25) shares of the par value of One Hundred ($100.00) Dollars each, the same having been acquired by him on January 26, 1931, being certificate #298, and which stock he continued to have and to hold from January 26, 1931, to November 3, 1932, when the certificate of stock was brought by Walter J. Hines to the Farmers National Bank of Fayetteville, and fifteen shares thereof, of the par value of One Hundred ($100.00) Dollars each, and of the total value of Fifteen Hundred ($1,500.00) Dollars, was transferred to one Sadie Frances Buchanan, a minor, under the age of twenty-one years, the said Walter J. Hines at the time surrendering the certificate numbered 298 for twenty-five shares of the par value of One Hundred ($100.00) Dollars each, and two certificates being issued in lieu thereof, to-wit, one certificate for fifteen shares of the par value of One Hundred ($100.00) Dollars each, being issued in the name of the said Sadie Frances Buchanan; that by reason of the losses aforesaid, and by virtue of the authority vested in him by law, the Comptroller of the Currency on

July 9, 1934, made an assessment against all of the capital stock, and the holders thereof, of Twenty-two Thousand Five Hundred ($22,500.00) Dollars, or 45% of the par value of each and every share of the capital stock of said Association, and thereafter, it being ascertained that said compensation was wholly insufficient to pay the losses of said Bank, the said Comptroller did, later make an additional assessment of 55% or altogether a total assessment of 100%, the second assessment being made, it being agreed by all parties concerned, in order to save the costs and expenses of filing a supplemental or amended bill in said cause, said additional assessment having been made since the original bill filed in this cause, in order to bring the whole matter before the Court, that the Court may under the pleading in this case, act upon the whole matter and render such decree in the case as the proof and law might warrant, as though such supplemental or amended bill had been brought to recover such additional assessment, and that said original bill should stand as amended or supplemented, and as though a supplemental bill had been brought to recover such additional 55% assessment, all in order that the Court might have the whole matter before it at one time and dispose of the whole matter at one time, without the actual costs of filing of such supplemental bill.

"The Court further finds that the placing of said fifteen shares of stock in the name of Sadie Frances Buchanan was pursuant to the order and direction of the defendant Frank D. Rambo, the Court finding as a fact that said Walter J. Hines traded said stock in as a payment for an automobile purchased by him, Walter J. Hines, of the said Frank D. Rambo, and that the defendant Frank D. Rambo ordered that the said stock be transferred into the name of said Sadie Frances Buchanan, his niece, and a minor, the Court further finding that by reason of Sadie Frances Buchanan being a minor, that no judgment for a stock assessment can be made against her.

"The Court is therefore of the opinion, and so orders, adjudges and decrees that both the defendants Frank D. Rambo, and Walter J. Hines, are liable for the assessment made, the said Frank D. Rambo to be primarily liable, and Walter J. Hines, secondarily liable for the full amount of said assessment against said stock, to-wit, the total sum of 100% of the par value thereof, of Fifteen Hundred ($1,500.00) together with interest thereon since said assessments were made, together with the costs of this cause.

"It is therefore ordered, adjudged and decreed by the Court that the Complainant John D. McDowell, have and recover first or primarily of the Defendant Frank D. Rambo, and next or secondarily against the defendant Walter J. Hines, the sum of Six Hundred Seventy-five ($675.00) Dollars, principal, the first assessment of 45% made by the Comptroller, on said stock, and Seventy-

one and 88/100 ($71.88) Dollars, interest since the date of said assessment, and the further principal sum of Eight Hundred Twenty-five ($825.00) Dollars, the additional 55% assessment made on said stock, and Thirty and 80/100 ($30.80) Dollars, of interest accrued thereon, since Oct. 11, 1935, the date of said assessment, or altogether the total sum of Fifteen Hundred ($1500.00) Dollars, of principal, and One Hundred Two and 68/100 ($102.68) Dollars of interest, or altogether the total sum of Sixteen Hundred Two and 68/100 ($1,602.68) Dollars, for which execution will issue against them, respectively, in the order named; that is to say, as against Frank D. Rambo primarily, and next or secondarily, against the defendant Walter J. Hines, no levy of execution to be had as against the said Walter J. Hines, if property of the defendant Frank D. Rambo, sufficient to collect the decree rendered against him with costs be found, out of which to satisfy this decree, otherwise then to be levied upon the property of the defendant Walter J. Hines.

"To the action of the Court in holding the defendant Frank D. Rambo to be first or primarily liable, and the defendant Walter J. Hines, only secondarily liable, and dismissing the cross-bill of defendant Rambo, the defendant Frank D. Rambo, by his attorney and Counsel, excepted at the time and prayed an appeal to the next term of the Court of Appeals, to be held at Nashville, Tennessee, which appeal was granted to him upon his filing with the Clerk & Master of this Court an appeal bond, in the amount of Two Thousand ($2,000.00) Dollars, which appeal bond to be conditioned to provide for the payment of the debt and costs, including the costs of the appeal, or to abide by and perform such decree as may be hereafter rendered in the cause."

Defendant Rambo perfected his appeal by filing an appeal bond in accordance with the aforesaid decree of the chancellor, and he has assigned errors in this court.

Defendant Hines did not appeal, and, as between him and the the complainant receiver, the judgment against Hines, is not open for review in this court.

Appellant Rambo has filed seven assignments of error, but, in connection therewith, it is said, in the brief of his counsel, that the assignments of error may be "condensed," as they present for consideration only the following propositions:

(1) "The Court was without jurisdiction to try the issues," for the reason that "the record shows clearly that the cause was not at issue because of no service of process, acknowledgment of service or answer of McDowell, Receiver, to Rambo's cross-bill."

(2) "Rambo is not liable, primarily or secondarily, for the reason that he never owned nor intended to own the stock in question."

(3) "If Rambo is liable, it is only secondarily and Hines is liable primarily, because it is self-evident from Hines' action in divest-

ing himself of the whole twenty-five shares which he had owned for several years and on account of which he had acted as a director of the Bank and, therefore, was charged with the knowledge of its affairs as well as by his testifying that he did know in regard thereto.''

(4) "Hines is solely liable for the reason that, drawing a fair inference from the evidence, Hines as an officer and stockholder of the Bank divested himself of the stock in order to evade a possible double or partial-double assessment.''

The first proposition, in the order above stated, is stated last in appellant's brief, but obviously it should be first considered, for, if the court was without jurisdiction, the other propositions would be immaterial.

Under the Code, the defendant may file his answer as a cross-bill and seek affirmative relief against the original complainant or against any other defendants to the original bill, and in such case "process and copies shall be issued and served on all material cross-defendants named therein.'' Code, sections 10401-10403.

All of the allegations of Rambo's answer and cross-bill were of a defensive character, so far as they related to the claim of the receiver, and he did not pray for any "affirmative relief" against the receiver. The receiver was, therefore, not a "material cross-defendant,'' although Rambo prayed that process issue requiring him to answer, but not on oath. To require the receiver to answer Rambo's cross-bill under these circumstances would have been a "barren technicality.''

Moreover, there is no suggestion on the record that the absence of such answer by the receiver was questioned in the trial court, or that it was in any manner or at any time called to the attention of the chancellor. The case was tried below on the theory that issues between the parties were made by proper pleadings, and in such case the failure to file an answer is not ground for reversal on appeal. 4 Corpus Juris Secundum, Appeal and Error, page 477, section 241; Sindle v. American Railway Express Co., 8 Tenn. App., 594, 597, and authorities there cited. The chancery court clearly had jurisdiction to "try the issues" in the instant case.

The principal questions for decision are (1) whether appellant Rambo is liable to the receiver for the assessment on the 15 shares of stock in question, and (2) if liable, whether his liability is primary, or is secondary to that of Hines.

Hines was the registered owner of 25 shares of the capital stock of the Farmers National Bank of Fayetteville, of the par value of $100 per share, from January 26, 1931, to November 3, 1932. During this period, he was a director of said bank, but, so far as ap-

pears, he held no other official relation to the bank. He was sixty-nine years of age at the time he testified in this case.

Rambo was, at the time of all of the transactions involved in this case, a dealer in automobiles, both new and used cars, in the town of Fayetteville, under the tradename of Rambo Motor Company. He was an experienced business man, forty-seven years of age, and had been in the automobile business for twenty-four years at the time his deposition was taken in this case. Prior to the transactions here under investigation, he had own|ed., held for a time, and sold, or "traded," some stock in the Farmers National Bank. He was a director of another bank in Fayetteville at the time he testified.

On November 3, 1932, Mr. Hines went to Mr. Rambo's place of business in Fayetteville and looked at some used cars that Mr. Rambo had for sale, and decided that he would like to have a certain used Chevrolet car, which was "marked" either $450 or $500. After some negotiations, Hines agreed to give, and Rambo agreed to take, 15 shares of Farmers National Bank stock for said car, whereupon Rambo went to the courthouse to "get the license plate out on the car," and Hines went to the Farmers National Bank for the purpose of having the 15 shares of stock transferred on the stock books of the bank. On his arrival at the bank, Hines handed his certificate for 25 shares of stock to J. W. Darrah, cashier and custodian of the stock book of the First National Bank, and stated that "he wanted fifteen shares transferred to Mr. Rambo and ten shares to him." Darrah began to make the appropriate entries on the "stub" in the stock certificate book, but had written only the name F. D. Rambo on the stub, when Cecil Green, Rambo's bookkeeper, entered the room where Darrah was engaged in making the transfer as aforesaid, and told Darrah that the stock was not to be transferred to Mr. Rambo and for him (Darrah) "to hold matters up until he could get in touch with Mr. Rambo." With reference to what occurred at this point, we quote from Mr. Darrah's testimony as follows:

"Mr. Rambo came down presently, and stated that the stock was not to be transferred to him, but was to be transferred to Miss Sadie Buchanan. I had already started making the transfer, but after some discussion between Mr. Rambo and Mr. Hines, I was told to put the stock in Miss Sadie Frances Buchanan's name, which I did. Then Mr. Rambo was going to receipt for the stock. The stock certificate book had to be receipted for, and I told him he couldn't do that. Miss Buchanan would have to receipt for it herself, and I would deliver the stock to her when she came in and signed for it, which she did sometime thereafter.

"Q. You had written the name 'Frank D. Rambo' on the stub

when Mr. Green came in, had you Mr. Darrah? A. I had written it on the stub.

"Q. And after Mr. Rambo came and told you to transfer it to his niece, Sadie Frances, you took your pen and ran two lines through Frank D. Rambo's name? A. Yes, sir."

The foregoing statement of facts is supported by substantially undisputed testimony; but there is a conflict of testimony between Mr. Hines and Mr. Rambo with respect to one of the details of the transaction. There was no suggestion of an effort to impeach the good character of either of these gentlemen for truth and veracity or otherwise, and we see no reason to attribute to either a wilful perversion of the facts; but manifestly the recollection of one or the other is at fault with respect to one matter which we will presently mention, for their testimony as to this matter cannot be reconciled.

Hines testified that he heard no suggestion during the negotiations that Rambo intended to give the bank stock to his niece, or to have the certificate issued in her name; that when he and Rambo agreed upon the exchange of the 15 shares of stock for the car, Rambo said: "I will get the license plate out on the car, and you go over and tell Mr. Darrah to transfer the stock to me;" and that the first time he (Hines) heard anything about Rambo planning to give the stock to his niece was when Rambo came to the bank after Darrah had started to fill out the stock certificate to Rambo and had been stopped by Green.

Rambo testified that, in the course of the "bickering" which culminated in the trade, he told Hines that he (Rambo) knew the stock was bad, but he "was willing to take fifteen shares of stock for the car;" that he said (to Hines) that he was going to give it to his niece; that he did not want it at all; that, if they traded, it was going to be issued to his niece; and that he told Hines to have it transferred to his niece.

We think the attendant circumstances corroborate Mr. Hines' testimony that he did not know until he had returned to the bank, and Mr. Green had brought Mr. Rambo's message to the bank, that Rambo wanted the stock issued in the name of his niece; and we so find.

If Rambo had a clear understanding with Hines that the stock was to be issued to Rambo's niece and had given Hines positive instructions to that effect, it is not reasonable to suppose that he would have sent Green to the bank with instructions to have the stock issued to his niece, in the absence of an intimation that Hines would not carry out his instructions.

Moreover, the fact that Hines did not object to the issuance of the certificate to Rambo's niece when Rambo appeared at the bank and directed Darrah to so issue it is significant. If Hines

had no objection to the issuance of the certificate to Sadie Frances Buchanan, and he had "traded" with Rambo with the understanding and agreement that the certificate would be issued to Sadie Frances Buchanan, why did he immediately ignore this agreement and direct Darrah to issue the certificate to Rambo? Evidence of the terms of an agreement is better afforded by the acts of the parties under it while harmonious and practical construction reflects their intention, than when subsequent differences "have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it of what was intended by its provisions." Pigg v. Houston & Liggett, 8 Tenn. App., 613, 633, and authorities there cited.

■ However, we think it is immaterial whether Rambo did or did not tell Hines before or at the time the "trade" was agreed upon that it was his purpose to have the stock issued in the name of his niece. Rambo paid for the stock and became the owner thereof. His niece (a minor, thirteen years of age) gave nothing for the stock, was not a party to the contract with Hines, and if Rambo had altered his purpose and had the stock issued to some other person before the certificate was issued to her, she could not complain.

We think it evident from appellant Rambo's testimony that his controlling motive in having the certificate issued to his niece was to avoid liability for an assessment against him on the stock. On this point, we quote some excerpts from appellant Rambo's testimony as follows:

"I told Mr. Hines I knew the stock was bad—that I didn't want the stock at all, because I said I had some stock of the Farmers Bank, and had traded it to Mr. Moores on a building that I bought from him. Mr. Moores was president of the Farmers Bank. But I said I was willing to take fifteen shares of stock for the car. But I said I was going to give it to my niece. I said I didn't want it at all. I said if we traded, it was going to be issued to my niece, and in the course of the deal we had there, Byrd Wilson and one or two of the other salesmen were out in the front. Byrd called me out and said, 'Are you going to deal?' I said, 'I don't know.' I said, he offered to trade Farmers Bank Stock, and if he gave me enough, I would trade. He said, 'That stock is not worth a dam.' And I said, 'I am not going to take it myseslf. I will trade for it for my niece, and we will just be out a used car if nothing comes of it.' I told Mr. Hines to go on to the Bank and I would be on down in a few minutes, and for him to be having the stock transferred. . . ."

## Cross-examination.

"Q. Whom did this Chevrolet car belong to? A. To me.

"Q. You traded the car to Mr. Hines? A. Yes, sir.

"Q. And you directed Mr. Hines to make this stock certificate to whom? A. Sadie Frances Buchanan.

"Q. Now, it was a fair and square trade, was it, Mr. Rambo? A. Yes, sir.

"Q. And for these fifteen shares of stock? A. That is right.

"Q. I believe you stated you had knowledge at the time that the stock was of doubtful value? A. That is right.

"Q. And you didn't want to assume liability on it? A. No, sir.

"Q. And the expedient you resorted to to avoid liability after you had paid for the stock with your car was to make it to your niece? A. No, sir, I told him so in the course of the deal.

"Q. In the course of the deal, then, for the purpose of avoiding liability on this stock you were going to pay for, you told him you wanted it made to your niece? A. That I was giving it to her direct, and told her so, and my mother and father so, after the deal was made, and after she signed for the stock. . . .

"Q. And it wasn't Sadie Frances' money or car that went for the purchase of the stock? It was yours? A. That is right.

"Q. Now, Mr. Rambo, your mother and father have raised this niece? A. Yes, sir.

"Q. What made you, then, give this girl something you thought was worthless? A. Well, I just figured if it was ever worth anything, she would have something by the time she was of age and got ready to go off to school, and if it wasn't worth anything there wasn't much lost—I was out a used car.

"Q. If it was good, would you have taken it? I don't mean after you had given it to her, but in the original negotiations, would you have taken it yourself? A. I don't know. It never entered my mind.

"Q. What entered your mind was that you knew it was virtually worthless and there was liability attached to it, and you would give it to your niece? A. Yes, sir. . . ."

## Re-examination.

"Q. Mr. Rambo, Mr. Lamb, asked Mr. Green about, as an expedient to avoid liability on stock, you were putting it in the name of your niece. I will ask you whether or not during the little girl's life if you haven't contributed to her and given her many things? A. Yes, sir.

"Q. That wasn't the first time you had given her anything? A. No, sir.

"Q. Her mother was dead and you were helping her? A. Mama

and Papa weren't able to do the things for her that they would like to, and of course I have been doing them myself. . . . ''

## Cross-examination.

''Q. Mr. Rambo, what did you mean by statements in substance made to Mr. Green and to Mr. Wilson that you knew the stock was worthless, but it was simply a gamble, with no particular danger to you, as you were going to have the certificate made out in the name of Sadie Frances or were giving it to her? A. I said I was giving the stock to Sadie Frances, and if it was ever worth anything, she would have something, and if not ever worth anything, I was out nothing but a second hand car.

''Q. In other words, you were not liable? A. That is right, because I was giving it to her.

''Q. And that is still your insistence, because you swapped your car for it and gave it to her, your minor niece, you were not liable? A. Not a bit.''

The liability of stockholders in a national bank is based upon the federal statute, title 12 U. S. C., section 64, 12 U. S. C. A., section 64. ''As a general rule, the person in whose name the stock stands on the books of the bank is liable but the actual owner may be held although the stock has not been registered in his name.'' Forrest v. Jack, Receiver, etc., 294 U. S., 158, 162, 55 S. Ct. 370; 371, 79 L. Ed. 829, 832, 96 A. L. R. 1457, and other cases there cited.

And for the rule that ''the real owner of the shares may be held responsible, although in fact the shares are not registered in his name.'' See, also, Ohio Valley National Bank v. Hulitt, 204 U. S., 162-168, 27 S. Ct. 179, 181, 51 L. Ed. 423, 427; McCandless v. Haskins, D. C., 20 F. (2d), 688, 691.

A minor is without legal capacity to assume the obligation of a shareholder in a national bank, and is not subject to an assessment therefor. Seabury v. Green, 294 U. S., 165, 168, 55 S. Ct. 373, 375, 79 L. Ed., 834, 837, 96 A. L. R. 1463; Early v. Richardson, 280 U. S., 496, 50 S. Ct. 176, 74 L. Ed., 575, 69 A. L. R. 658; annotated, page 661.

''It is a settled rule that, where one subscribes for shares of stock in the name of an infant, he is liable personally to the corporation, or to the corporate creditors, on the subscriptions.'' 1 Cook on Corporations (6 Ed), page 283, section 67.

In Riley v. Bondi, 8 Cir.; 64 F. (2d), 515, 517, it was held that, ''where a father in his own name and with his own funds buys stock in a national bank, intending to make a gift of the same to his infant child, and does make such gift by having new certificates issued in the name of the child, the father's liability to assessment is clear, for in such case the father is the transferor.'' To same effect, see Foster v. Chase, C. C., 75 F. 797; Foster v.

Wilson, C. C., 75 F., 797, 798; Shaw v. McMillan, Tex. Civ. App., 24 S. W. (2d), 536 (wherein the same rule was applied under the Texas banking laws).

The assent of the cashier of the bank to the issuance of the certificate to a minor is not material for "the liability of the shareholder in a national bank is not contractual, but rests on a statutory liability which the executive officers of a national bank cannot waive. . . . The law properly imposes upon shareholders in a national bank a conditional liability as a protection and shield to depositors and general creditors. That protection cannot be removed by sales and transfers of stock to infants or other purchasers who cannot legally contract to accept the same." Aldrich v. Bingham, D. C., 131 F., 363, 365.

As between Hines and Rambo, the transfer of the 15 shares to Rambo was a completed transaction. "The validity of a sale" (of shares in a corporation) "and its completeness must be determined by the relation which the contracting parties at the time openly bear to each other." Johnston v. Laflin, 103 U. S., 800, 805, 26 L. Ed., 532, 535. The certificate was surrendered to the bank by Hines in person, Whitney v. Butler, 118 U. S., 655, 7 S. Ct. 61, 30 L. Ed., 266, 268, with instructions to make the transfer. The issuance of a new certificate was not essential to pass title to Rambo. Cox v. Elmendorf, 97 Tenn., 518, 37 S. W., 387; Parker v. Bethel Hotel Co., 96 Tenn., 252, 254, 34 S. W., 209, 31 L. R. A. 706; Uffelman v. Boillin, 19 Tenn. App., 1, 32, 36, 82 S. W. (2d), 545; Whitney v. Butler, supra; Bracken v. Nicol, 124 Ky., 628, 99 S. W., 920, 11 L. R. A. (N. S.), 818, 14 Ann. Cas. 896; State ex rel. v. Ware, 82 Okl. 130, 198 P. 859, 45 A. L. R. 127.

"If the real owner of the shares transfers them to another person, or causes them to be placed on the books of the association in the name of another person, with the intent simply to evade the responsibility imposed by section 5151 on shareholders of national banking associations, such owner may be treated, for the purposes of that section, as a shareholder, and liable as therein prescribed." Pauly v. State Loan & Trust Co., 165 U. S., 606, 619, 17 S. Ct., 465, 470, 41 L. Ed. 844, 849. Accordant: Germania National Bank v. Case, 99 U. S., 628, 25 L. Ed. 448, 450.

The known irresponsibility of the transferee is evidence of fraudulent intent on the part of the transferor. McDonald v. Dewey, 202 U. S., 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419, annotated, page 428 et seq.; Newton v. Bennett, 159 Ga. 426, 126 S. E., 242, 45 A. L. R. 93, annotated.

We find no error in the decree of the chancery court. The assignments of error are, therefore, overruled, and the decree is affirmed, and a decree will be entered accordingly against appellant Rambo and the sureties on his appeal bond, for the amount of the

judgment below, with interest thereon from its date, and for the costs of the cause, including the costs of the appeal.

It appears that appellee Walter J. Hines has died since the appeal, and that the cause has been revived as to him in the name of his executors and executrices, as shown by an order heretofore duly made and entered of record by and in this court, and the decree will be framed accordingly.

Crownover and Felts, JJ., concur.