FIRST AMERICAN NATIONAL BANK
OF NASHVILLE,
Plaintiff-Cross-Defendant-Appellee,

v.

Larry L. HUNTER,
Defendant-Cross-Plaintiff-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Dec. 1, 1978.

Certiorari Denied by Supreme Court
May 7, 1979.

Charles K. Wray and James Berry, Jr., Nashville, for plaintiff-cross-defendant-appellee.

Oliver B. Dickins, Jr., Atlanta, Ga., W. Henry Haile, Nashville, Wm. Wilkinson, Ashland City, for defendant-cross-plaintiff-appellant.

## OPINION

TODD, Judge.

The defendant-cross plaintiff, Larry L. Hunter, has filed a limited appeal from that part of the Chancellor's decree which declines to certify cross-plaintiff's counterclaim as a class action.

Plaintiff sued to collect a $6,250.79 note dated October 16, 1974, due 30 days from date. The note provided for interest of $9\frac{3}{4}$% per annum in advance. Interest of $50.79 was deducted in advance, and the borrower received $6,200.00 proceeds of the loan. The advance interest was computed on the basis of $30/360$ ($1/12$) of the annual charge of $9\frac{3}{4}$% of $6,250.79.

The defendant filed two defenses:

(1) That the method of computing the amount of advance interest was a "breach of contract" in that the charge should have been $30/365$ of the annual interest.

(2) That the transaction was usurious.

On November 15, 1976, the Chancellor entered a decree allowing defendant a credit of seventy cents (.70) reducing the principal amount to $6,250.09 for which judgment was rendered together with interest and attorneys fees. The defense of usury was disallowed.

There is no appeal from the foregoing action of the Chancellor. Thereafter, on February 14, 1978, after much pleading, responding, interrogating, deposing and motion-making by the parties, the Chancellor entered a final decree "that this case may not be maintained as a class action" and reiterating the previous judgment in favor of plaintiff.

The opening sentence of appellant's preliminary statement of issues is:

"This is a limited appeal from the Chancellor's refusal to certify a class action."

The assignments of error are as follows:

"1. The Chancellor erred in holding that Hunter was not a member of the class.

2. The Chancellor erred in concluding that extrinsic evidence is admissible to modify the meaning of an unambiguous contract."

The motion for certification reads in pertinent part as follows:

" . . . the counterplaintiff moves the court to certify the present case as a class action, with classes defined as follows:

1. *As to the claim sounding in breach of contract*:

a. The class consists of all of FANB's borrowers of commercial loans who executed promissory notes on or after January 1, 1970 and before October 1, 1975 (for secured loans) or before March 1, 1976 (for unsecured loans).

b. Notwithstanding par. 1.a., there shall be excluded from the class:

A. Any borrowers who FANB show that the promissory note did not provide for interest at "____% per annum" (or some equivalent phrase); or

B. Borrowers who have been sued in separate legal proceedings (in connection with the promissory note) by FANB; or

C. Borrowers who, though they have not been sued by FANB, are in default on a note presently in the possession of FANB.

2. *As to the claim sounding in usury*: The class consists of all members of the class defined in par. 1 for the breach-of-contract claim who executed their promissory note on or after September 5, 1973.

Alternatively, the counterplaintiff moves the court to certify the present case as a class action, defining the classes in a manner the court deems appropriate to achieve justice."

The memorandum of the Chancellor reads in pertinent part as follows:

"At the outset, it appears to the Court that the defendant-counter-claimant is seeking to represent the class of which he is not a member. The definition of the class excludes those who have been sued by the Bank and those who are in default on their promissory notes. The defendant-counter-claimant fits into both of those categories. For that reason, the Court is of the opinion that Hunter cannot represent the class for which certification is sought. The same reasoning applies to the claim for usury. The Court has previously found that the Bank's custom of calculating interest on a 360-day year did not result in usurious interest being paid in this case. Therefore, the party seeking to represent the class does not fit the class description.

In addition to the above reason, and perhaps more importantly, the Court finds that the typicality requirement of Rule 23.01(3) and the requirement in 23.-02(3) that the common questions of law and fact predominate over questions affecting individual members are not supported by the proof in the record in this cause.

The Court granted relief to the defendant-counter-claimant on the basis of a breach of contract resulting from the Bank's calculation of interest on the basis of a 360-day year. In order to determine that the members of the class are entitled to recover damages for breach of contract the circumstances surrounding the execution of the note in each individual case would have to be examined. It appears from the record that some borrowers were aware of the Bank's custom and acquiesced in the practice of computing interest on a 360-day year. In addition knowledge of the practice and acquiescence might also be inferred from other documents which were executed as a part of the transaction. See *Chern v. Bank of America,* 15 Cal.3d 866 [127 Cal.Rptr. 110], 544 P.2d 1310 (1976). In the instant case a close question was presented because of the existence of documents including disclosure statements from which individual knowledge and acquiescence might be shown. The existence of such documents, or other evidence, from which knowledge and acquiescence might be shown would have to be examined in each individual case. Therefore, the Court concludes that this is not a proper case for a class certification."

■ It is obvious that appellant cannot represent a class based upon a right of action or defense of usury, because his claim of usury has been disallowed, there has been no appeal from the disallowance, and same has become final.

Appellant's right to represent a class may be based solely upon the seventy cent credit allowed him for overcharge in interest.

The Chancellor's observation (that appellant cannot represent a class who have not been sued because he has been sued) is, perhaps, a bit narrow. If applied literally, there could be no class actions.

On the other hand, appellant was, perhaps, inexact or imprecise in designating a class which had not been sued instead of a class consisting of himself (sued) and all others who had not been sued.

By the very nature of a class action, there must be one number of the class before the court as a party seeking to obtain the joinder of others not yet before the court.

Nevertheless the portion of the Chancellor's memorandum just mentioned does not affect the result reached by him, for his other reasoning is well founded and justifies his conclusion.

The Chancellor was correct in observing the distinction between appellant's position (in default) and the position of the proposed class (not in default).

The record contains affidavits of borrowers from plaintiff bank that they understood and acquiesced in the practice of the bank in basing interest charges on a 360-day year instead of a 365-day year. There are also affidavits of bank officers as to the bank's method of handling loan transactions with its customers and the execution of "disclosure statements" wherein the exact amount of interest charges was stated.

█ The gravamen of appellant's argument is that the Chancellor erred in holding that it would be proper to consider evidence other than the note executed by such member. It is argued by appellant that the expression, "interest at ____% per annum" in plaintiff's note form is plain and unambiguous, hence cannot be altered or varied by other communications between the parties, whether by business practice, acquiescence, or express verbal or written understanding.

Appellant argues that the words, "per annum" can have but one meaning, that is, a time span of 365 days.

In 86 C.J.S. *Time* § 9, pp. 832, 833, is found the following text:

"The word "year" is broadly defined as meaning a period of time, and it is more specifically defined as the period in which the revolution of the earth around the sun, and the accompanying changes in the order of nature, are completed; a determinate and a well-known period consisting commonly of three hundred and sixty-five days; a period of three hundred and sixty-five calendar days, and in leap years three hundred and sixty-six; a period of twelve months; twelve calendar months; and, indeed, a year, twelve months, fifty-two weeks, and three hundred and sixty-five days, all denote the same total period of time."

It is readily seen from the varied decisions supporting the above text that the meaning of the word "year" is established in broad, general terms, but is not so thoroughly established as to minute detail.

The calendar now generally accepted in Western Civilization is the Gregorian Calendar which allots 365 days to ordinary years, but 366 days to "Leap Years" which are the years whose numbers are divisible by four (4) *except* the centesimal years which are not leap years unless their number is divisible by 400.

For example, the years 1200 and 1600 were leap years, but the intervening centesimal years 1300, 1400 and 1500 were not leap years because they were not divisible by 400.

Thus, according to our present calendar, in each 400 year period, there are 303 ordinary years of 365 days each and 97 leap years of 366 days each.

It is also generally recognized that a true year represents the period required for the earth to complete an orbit around the sun, and that this period does not change from year to year. That is, the occurrence of leap years is arranged in the calendar to compensate for the fact that the time of the earth's orbit around the sun is not exactly 365 days, nor 366 days. By simple mathematical computation, it can be (and has been) determined that the Gregorian Calendar recognizes that a true year is composed of 365.2425 days.

The foregoing illustrates the fact that the words "per annum" are not necessarily unambiguous so as to preclude other evidence in explanation.

The phrase, "interest at ____% per annum" does unequivocally indicate that ____% of the principal shall constitute the interest charge for a year, but the phrase does not indicate the exact manner in which interest shall be computed for less than a year, that is, whether interest for 30 days shall be 30/360, 30/365, 30/365.2425 or 30/366 (in a leap year) or some other fraction of the annual charge. This uncertainty of detail (latent ambiguity) must be resolved by inquiry regarding the actual intent of the parties as to the meaning of the words used by them. For such purpose, any statements, acts or writings of the parties and any business custom known to them may be considered to the extent that it reflects upon the mutual intent of the parties at the time of making of the contract as to the meaning of the word or phrase used by them in their contract. *Springfield Tobacco Redryers Corp. v. City of Springfield,* 41 Tenn.App. 254, 293 S.W.2d 189 (1956); *Frierson v. International Agriculture Corp.,* 24 Tenn.App. 616, 148 S.W.2d 27 (1940); *McDowell v. Rambo,* 21 Tenn.App. 448, 111 S.W.2d 892 (1937); 17–A C.J.S. *Contracts* § 597a, b, p. 1163 et seq.

Authorities cited by appellant merely state the general rule and do not contradict the principle just expressed.

■ Moreover, it is well settled that a collateral agreement may be enforceable as constituting part of the consideration or inducement of the principal agreement. For example, there is no reason why a borrower could not induce the bank to make his loan by agreeing that interest be computed upon a 360-day year. See authorities annotated in 9 Tenn.Dig., *Evidence,* ☞441–444.

■ Appellant next insists that his claim is identical in all respects to that of the members of the proposed class.

The record contains affidavits of bank customers that they understood and assented to the practice of using a 360-day year for convenience in computation. There are also affidavits of bank officials as to course of dealings with customers and the variety of complications to be encountered in attempting to assemble and relate facts regarding all members of the class. There is also evidence that bank customers regularly executed a separate instrument acknowledging the disclosure of the exact amount of interest to be charged.

In *Bennett v. Stutts,* Tenn.1975, 521 S.W.2d 575, the Supreme Court stated that Rule 23 of the Rules of Civil Procedure did not create rights but regulated procedure. From this, it is deducible that the prosecution of a class action is not a matter of right which may be demanded. It is, more accurately, a procedural privilege to be utilized within the sound discretion of the Trial Judge. It has, however, been held that the unreasonable denial of the privilege may be reversible error.

In *Kansas City, Mo. v. Williams,* C.A.8 1953, 205 F.2d 47, cert. den. 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351, it was held that the trial court has some measure of discretion as to whether a class adjudication can serve any useful purpose in a particular situation.

To the same general effect is *Pacific Fire Ins. Co. v. Reiner,* D.C.La.1942, 45 F.Supp. 703.

Appellant cites authorities wherein certification of class actions was upheld. However, none deal with a question similar to that involved in the present case, that is, none deals with a contract provision the *practical implementation of which* was a matter of mutual understanding, practice, or separate agreement as in the present case.

Appellant cites no authority wherein the trial court was reversed for refusal to certify a class.

From a consideration of all of the circumstances, this Court has concluded that the

Chancellor's refusal to certify the proposed class was within the range of his discretion and was not error.

This conclusion is reinforced by the obvious fact that the claims of all borrowers who have not yet paid their loan would represent an off-set against the claim of the bank, in which event, both the claim for payment of the loan and the claimed credit or off-set ought to be determined in the same action.

The decree of the Chancellor is affirmed. Costs of this appeal are taxed against appellant.

Affirmed.

DROWOTA and LEWIS, JJ., concur.