FILED

08/29/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 18, 2018 Session

## AMERICAN HERITAGE APARTMENTS, INC. v. HAMILTON COUNTY WATER AND WASTEWATER TREATMENT AUTHORITY, HAMILTON COUNTY, TENNESSEE

Interlocutory Appeal from the Circuit Court for Hamilton County
No. 11C1207    J.B. Bennett, Judge

_____

### No. E2017-01307-COA-R9-CV

_____

In this interlocutory appeal, the issue is whether a statutory amendment barring class action lawsuits against the defendant, Tenn. Code Ann. § 68-221-608(e)(4) (Supp. 2017), applies retroactively thereby requiring the denial of the plaintiff's previously-filed request for class certification under Tenn. R. Civ. P. 23.  We hold that the statutory language at issue, providing that, "[t]his part shall not authorize or permit any class action lawsuits against any authority," is unambiguous, and therefore reference to its legislative history is unnecessary and improper.  Because this provision is procedural and remedial in nature, not affecting substantive rights of the plaintiff, we affirm the trial court's judgment that it applies retroactively to bar plaintiff's class certification request.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court
Affirmed; Case Remanded**


CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

J. Gerard Stranch, IV, Michael G. Stewart, Nashville, Tennessee, and Jimmy F. Rodgers, Chattanooga, Tennessee, for the appellant, American Heritage Apartments, Inc.

J. Christopher Clem, Chattanooga, Tennessee, and James L. Hollis, Atlanta, Georgia, for the appellee, Hamilton County Water and Wastewater Treatment Authority, Hamilton County, Tennessee.

## OPINION

## I.

This action was filed on October 3, 2011. At an earlier time, this case had been appealed and heard by the Supreme Court, ***Amer. Heritage Apts., Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.***, 494 S.W.3d 31 (Tenn. 2016), which remanded it to the trial court. It is now back before this Court on interlocutory appeal. The factual and procedural history is as set forth by the Supreme Court as follows:

> To build [a] needed sewer system, the Hamilton County Commission created a water and wastewater treatment authority (hereinafter "wastewater treatment authority") in accordance with Tennessee Code Annotated sections 68–221–601–618 (2013), known as the Water and Wastewater Treatment Authority Act ("WWTA Act"). The entity it created is the appellant in this action, the Defendant/Appellant Hamilton County Water and Wastewater Treatment Authority ("County Authority"). . . .

> By 2008, the sewer systems in the service areas of the County Authority became unable to process adequately the high influx of storm and rain water. This caused a variety of difficulties. Ultimately, the problem got the attention of the Tennessee Department of Environment and Conservation (TDEC), which concluded that the inability to process the storm and rain water violated various TDEC requirements. On March 20, 2008, TDEC issued an order ("TDEC order") concluding that the County Authority had violated TDEC requirements. TDEC directed the County Authority to develop a program to prevent storm water from entering or infiltrating the sewer system in Hamilton County. . . .

> To comply with the TDEC order, the County Authority implemented several strategies. These strategies included an ambitious program called the Private Service Lateral Program ("the Program"). The aim of the Program was to repair and refurbish all of the pieces of pipe that connect private properties to county-owned sewer lines; the pieces of pipe are referred to as either "sewer laterals" or "private sewer service laterals." To accomplish this, the Program outlined plans to

have all 26,000 of the private service laterals in the service area inspected and repaired or replaced as necessary.

To cover the cost of the Program, the County Authority voted to authorize a flat-rate monthly fee of $8 per unit (the "$8 Charge") for all of its customers. The $8 Charge would appear as a separate monthly fee on customers' water bills for a period of twenty years.

*     *     *

Plaintiff/Appellant American Heritage Apartments, Inc. ("American Heritage"), is a Tennessee, not-for-profit corporation that operates a low-income, 168–unit apartment complex in East Ridge, Tennessee, one of the incorporated municipalities served by the County Authority. On August 19, 2011, the County Authority sent American Heritage a letter notifying it of the $8-per-unit Charge on its water bill. Based on a 90% occupancy rate, the letter stated, the County Authority would charge American Heritage $8 each for 151 units. This amounts to $1,208 per month or $14,496 per year; over the 20-year projected life of the Program, the charges would total over $289,000. . . . This lawsuit followed.

. . . The complaint was filed by American Heritage both individually and as a class action pursuant to Rule 23 of the Tennessee Rules of Civil Procedure. American Heritage asserted in essence that, by imposing the $8 Charge on its customers, the County Authority exceeded its statutory authority. American Heritage contended that, because sewer service laterals are owned by the owners of the buildings to which they connect, the County Authority should charge customers according to their need of repair rather than by a per-unit flat fee. American Heritage asked the trial court to declare that (1) the imposition of the $8 Charge constitutes an *ultra vires* act of the County Authority and is not "just and equitable, as required by statute and under the common law"; (2) the $8 Charge breaches the County Authority's contracts with American Heritage and the other members of the class;

(3) the Program violates Tennessee Code Annotated section 7–35–401; and (4) the Program creates a monopoly that violates the Tennessee Constitution, Article II, section 21. American Heritage also asked the trial court to order the County Authority to cease collecting the $8 Charge, conduct an accounting, and refund all collected charges to the landowners who had paid them. Overall, American Heritage sought declaratory relief, injunctive relief, restitution, costs, and any other available relief.

*Id.* at 33-35 (Italics in original; footnotes omitted).

The County Authority moved for summary judgment on the grounds that (1) American Heritage failed to exhaust administrative remedies under the Utility District Law (UDL) of 1937, Tenn. Code Ann. § 7-82-701 *et seq.*; (2) the WWTA Act, Tenn. Code Ann. § 68-221-601 through -608, does not provide a private right of action for citizens to contest or recover utility charges; and (3) class action certification under Tenn. R. Civ. P. 23 would be improper in this case. The trial court held that because the UDL provided an administrative procedure for contesting utility charges, no private right of action was available under the WWTA Act. The court granted the County Authority summary judgment. As an alternative ruling, the trial court held that if it was in error finding no private right of action, that class certification would be granted. American Heritage appealed.

This Court disagreed with the trial court's conclusions that the UDL applies to American Heritage's claims and that there is no private right of action under the WWTA Act. ***American Heritage Apts., Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.***, No. E2014-00302-COA-R3-CV, 2015 WL 399215 (Tenn. Ct. App., filed Jan. 30, 2015). We affirmed the trial court's class action certification and vacated summary judgment. *Id.* at *13, *14. The County Authority appealed to the Supreme Court, which granted review.

The Supreme Court held as follows:

We hold that the administrative procedures in Part 4 of the Utility District Law of 1937 do not apply to a rate challenge filed by an individual customer against a water and wastewater treatment authority, so we agree with the Court of Appeals that the trial court erred in dismissing the lawsuit for failure to exhaust administrative remedies. We affirm the remainder of the Court of Appeals' decision, except that we

-4-

> vacate the trial court's alternative ruling on class certification
> and remand that issue to the trial court for reconsideration.

***Amer. Heritage Apts.***, 494 S.W.3d at 33. As regards the class certification ruling, the High Court held as follows:

> [T]the trial court did not indicate the subsection of Rule 23.02
> upon which it relied in making that determination.

> \*       \*       \*

> In order for an appellate court to conduct a meaningful review
> of a trial court's discretionary decision on class certification,
> the trial court must identify sufficient facts upon which it
> based its decision. In addition, although the record indicates
> that the trial court conducted a hearing on the question of
> class certification, the appellate record did not include the
> transcript of any such hearing. Therefore, with no factual
> findings and no record of the evidence submitted at any
> hearing, it is difficult to determine whether or to what extent
> the trial court actually engaged in the appropriate analysis in
> its alternative ruling. Remand to the trial court is not possible
> because the trial judge who certified the class is no longer on
> the bench. The new trial judge would be required to try the
> case based on the former trial judge's nonspecific rulings.

> Given this posture, we deem it prudent to vacate the trial
> court's alternative ruling on class certification and remand for
> the trial court to reconsider the issue anew.

***Id.*** at 51-52 (footnotes omitted). Moreover, in so ruling, the Supreme Court questioned whether class certification was appropriate under the circumstances, observing in footnote 26 the following:

> [T]he crux of American Heritage's argument is that there is
> disparity in how customers are treated and that charging an $8
> fee penalizes some low-volume water users and benefits high-
> volume users. If this is so, and the class is defined to include

> all of the County Authority's customers, then the members of
> the class would have interests that are not aligned.

*Id.* at 51 n.26.

On April 21, 2016, the same day the mandate issued on the Supreme Court's opinion in this case, the General Assembly passed an amendment to the WWTA Act. *See* 2016 Tenn. Pub. Acts Ch. 1050. The Governor signed it into law a week later. Among other things, it creates a new administrative remedy whereby aggrieved citizens may challenge a county authority's actions regarding "fees, rates, charges, penalties, or deposits." Tenn. Code Ann. § 68-221-608(e)(3)(A)(i). A complainant dissatisfied with the authority's decision may appeal to judicial review by common law certiorari. *Id.* § 68-221-608(e)(2). Directly pertinent to this appeal, the amendment also provides that "[t]his part shall not authorize or permit any class action lawsuits against any authority, except as to holders of the authority's bonds under § 68-221-611." *Id.* § 68-221-608(e)(4).

Shortly after remand to the trial court, the County Authority filed a motion for judgment on the pleadings, arguing that the new section 608 applies retroactively to bar American Heritage from seeking class certification. The trial court held that the class action prohibition is unambiguous and procedural in nature, and thus applies retroactively. The court then turned to the question of "whether the statute's ban on class actions applies to any claims brought against an entity created under the Act or solely as to claims brought under the WWTA Act itself." The trial court found the statute ambiguous on that point. After looking at the statutory scheme as a whole and the legislative history, it concluded that "the legislature intended for the administrative remedy to be the sole means of bringing any actions against the WWTA and other wastewater treatment authorities." American Heritage sought and received permission for this interlocutory appeal.

## II.

The issue is whether the trial court erred in applying the class action prohibition retroactively to deny American Heritage's request for class action certification. This question requires review of the trial court's statutory interpretation, an issue of law that we review de novo with no presumption of correctness. *Dedmon v. Steelman*, 535 S.W.3d 431, 437 (Tenn. 2017); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998).

## III.

As the Supreme Court noted,

> American Heritage filed a motion asking the trial court to certify the class of plaintiffs. American Heritage defined the class as "all County Authority customers who are being or have been charged the $8 Charge," excluding certain persons affiliated with the County and persons whose property had already been inspected or repaired under the Program.

*Amer. Heritage Apts.*, 494 S.W.3d at 36 (brackets in original omitted). Following remand, the trial court ruled that the class action prohibition was unambiguous for the purpose of determining whether it applies retroactively, but ambiguous as to the scope of the prohibition. American Heritage argues that the trial court erred in applying the statute retrospectively. It urges us to consider the legislative history, including the statement of the bill's sponsor, who said, among other things, the following:

> I assure you it is not my intent, nor do I see anything in the bill to apply this retrospectively. It has prospective applications only in my mind and I think in the letter of the law.

Generally, statutes are presumed to operate prospectively. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 497 (Tenn. 2017). "An exception exists, however, for statutes which are remedial or procedural in nature." *Id.* at 498 (quoting *Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993)). "Such statutes apply retrospectively . . . unless the legislature indicates a contrary intention or immediate application would produce an unjust result." *Id.* (quoting *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976)). We recently reiterated the legal principles applicable to the inquiry of whether a statute applies retroactively, stating as follows:

> Pursuant to the Tennessee Constitution, "no retrospective law, or law impairing the obligations of contracts, shall be made." *See* Tenn. Const. art. 1, § 20; *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004).

\*　　　\*　　　\*

As the Supreme Court noted in ***In re D.A.H.***, retrospective application is reserved for certain types of statutes:

> Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect.
>
> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained . . . ."

> ***Id.*** (quoting ***Nutt v. Champion Int'l Corp.***, 980 S.W.2d 365, 368 (Tenn. 1998)). In general, a statute is procedural "if it defines the . . . proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right." ***Sundquist***, 2 S.W.3d at 923 (citing ***Kuykendall v. Wheeler***, 890 S.W.2d 785, 787 (Tenn. 1994)). Similarly, "a statute is remedial if it provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." ***Id.*** (citing ***Dowlen v. Fitch***, 264 S.W.2d 824, 826 (Tenn. 1954)). However, "even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of Tennessee Constitution article I, section 20." ***Id.*** at 923-24. A "vested right" is defined as a right which "is proper for the state to recognize and protect and of which an individual could not be deprived arbitrarily without injustice." ***Id***. at 923 (quoting ***Morris v. Gross***, 572 S.W.2d 902, 905 (Tenn. 1978)).

***In re Mya H.***, No. W2016-01285-COA-R3-PT, 2017 WL 3176108, at *3-4 (Tenn. Ct. App., filed July 26, 2017) (ellipses in original; brackets in original omitted) (quoting ***In re Francis P.***, No. E2016-02493-COA-R3-PT, 2017 WL 2733793, at *10 (Tenn. Ct. App., filed June 26, 2017)). According to the Supreme Court, "[a] statute is remedial if it

-8-

provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." ***Doe v. Sundquist***, 2 S.W.3d 919, 923 (Tenn. 1999).

It is well established that Tenn. R. Civ. P. 23, which governs class action lawsuits, "simply regulate[s] procedure; [it does] not create substantive rights." ***Bennett v. Stutts***, 521 S.W.2d 575, 578 (Tenn. 1975). This Court has followed and applied ***Bennett*** on several occasions, stating as follows:

> In ***Bennett*** . . . , the Supreme Court stated that Rule 23 of the Rules of Civil Procedure did not create rights but regulated procedure. From this, it is deductible that the prosecution of a class action is not a matter of right which may be demanded. It is, more accurately, a procedural privilege to be utilized within the sound discretion of the Trial Judge.

***First Amer. Nat'l Bank of Nashville v. Hunter***, 581 S.W.2d 655, 659 (Tenn. Ct. App. 1978); *accord* ***Hamilton v. Gibson Cnty. Util. Dist.***, 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992); ***Crouch v. Bridge Terminal Transport, Inc.***, No. M2001-00789-COA-R3-CV, 2002 WL 772998, at *2 (Tenn. Ct. App., filed Apr. 30, 2002); ***Gov't Employees Ins. Co. v. Bloodworth***, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *44 (Tenn. Ct. App., filed June 29, 2007) (stating that "[c]lass action is a procedural device that cannot alter the substantive prerequisites for recovery under tort law").

It is clear that the statutory scheme at issue in this case is remedial in nature. It provides, in pertinent part, as follows:

> (e)(1)(A) Any person aggrieved by an appealable action of the [municipal authorities] board . . . may appeal the action by filing a written notice of the challenged action stating:
>
> (i) The action being appealed;
>
> (ii) The date of the appealed action;
>
> (iii) The manner in which the person is aggrieved;
>
> (iv) Each factual or legal basis for the appeal; and
>
> (v) The relief sought.

\*   \*   \*

(D) The authority shall establish rules and procedures governing the method for consideration of appeals filed pursuant to this subsection (e). . . .

(E) The authority shall determine all factual and legal issues raised in an appeal and shall state in writing to the aggrieved person the reasons for its decision.

(2) Any judicial review of the disposition of an appeal shall be by common law certiorari filed in a court of competent jurisdiction in the county where the authority's principal office is located. . . .

(3) As used in this subsection (e), "appealable action":

(A) Means:

(i) An action relating to the authority's duty to establish, charge, administer, and collect fees, rates, charges, penalties, and deposits; and

(ii) Other decisions based on the authority's rules and procedures that the authority designates as appealable actions; and

(B) Does not include any action relating to the issuance of bonds or debt, any civil service plan, or any other action not identified in subdivision (e)(3)(A).

(4) *This part shall not authorize or permit any class action lawsuits against any authority*, except as to holders of the authority's bonds under § 68-221-611.

(5) *This part shall not grant a private right of action*, except as to holders of the authority's bonds under § 68-221-611.[1]

---

[1] The parties agree that this subsection cannot be applied to defeat the plaintiffs' claims entirely, because to do so would be to retrospectively take away their vested substantive right, recognized by the Supreme Court, to bring a private right of action against the County Authority. *American Heritage*, 494

(6) The procedures established pursuant to this subsection (e) shall constitute the exclusive method of review of actions of the board and the board's officers and employees, except as to holders of the authority's bonds under § 68-221-611 and employees in a civil service plan under § 68-221-613.

Tenn. Code Ann. § 66-221-608(e) (emphasis added). In its brief, American Heritage frequently describes this statute as "creating a new administrative remedy." Because subsection 608(e)(4) is remedial and addresses the procedural privilege to proceed as a class action, the trial court did not err in applying it retroactively.

The trial court also correctly declined to consider legislative history as an interpretive aid in considering this issue. "When a statute's text is clear and unambiguous, we need look no further than the language of the statute itself." ***Wallace v. Metro. Gov't of Nashville***, 546 S.W.3d 47, 53 (Tenn. 2018). As stated by the Supreme Court,

> Our primary objective in statutory interpretation is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. ***Houghton v. Aramark Educ. Res., Inc.***, 90 S.W.3d 676, 678 (Tenn. 2002) (citations omitted). We first look to the statute's text, giving the words "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." ***Mills v. Fulmarque, Inc.***, 360 S.W.3d 362, 368 (Tenn. 2012). If a statute is clear, we apply the plain meaning without complicating the task and enforce the statute as written. ***Lind v. Beaman Dodge, Inc.***, 356 S.W.3d 889, 895 (Tenn. 2011). If a statute is ambiguous, we may consider "the broader statutory scheme, legislative history, and other sources" in discerning the legislative intent. ***Arden v. Kozawa***, 466 S.W.3d 758, 764 (Tenn. 2015).

***In re Bentley D.***, 537 S.W.3d 907, 911-12 (Tenn. 2017). In our view, the language of the statute barring class actions is clear and unambiguous. Tennessee Courts have observed that

---

S.W.3d at 52. Thus, there is no issue on appeal regarding the retroactive application of subsection 608(e)(5).

> [w]here there is no ambiguity in the language of an act, comments of legislators, or even sponsors of the legislation, before its passage are not effective to change the clear meaning of the language of the act.

*D. Canale & Co. v. Celauro*, 765 S.W.2d 736, 738 (Tenn. 1989); *Saturn Corp. v. Johnson*, 197 S.W.3d 273, 276 (Tenn. Ct. App. 2006); *ATS Southeast, Inc. v. Carrier Corp.*, 18 S.W.3d 626, 630 (Tenn. 2000); *see also Woodruff ex rel. Cockrell v. Walker*, 542 S.W.3d 486, 497 (Tenn. Ct. App. 2017) ("In the absence of ambiguity, we must therefore decline Plaintiffs' invitation to consider the statute's legislative history.").

We further hold that the language at issue is also unambiguous regarding its scope. Thus, although the trial court did not err in its conclusion that the legislature intended to bar all class actions against the County Authority, regardless of theory, it was unnecessary to consider the legislative history to reach that conclusion. The statute provides, "[t]his part shall not authorize or permit *any* class action lawsuits against *any* authority," with a prescribed exception not applicable here. (Emphasis added.) If the legislature intended to restrict the class action ban to only actions brought "under this part" or "under the WWTA," it knows how to say so, and would have included such a provision in the amendment. *See, e.g.,* Tenn. Code Ann. § 56-53-107(a)(2)(2016) ("*An action maintained under subdivision (a)(1)* may neither be certified as a class action nor be made part of a class action.") (emphasis added). We hold that in barring "any class action lawsuits," the General Assembly intended to bar *any* class action lawsuit against the County Authority. *See U.S. v. Winans*, 748 F.3d 268, 272 (6th Cir. 2014) ("Any means any.").

## IV.

The judgment of the trial court is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, American Heritage Apartments, Inc.

_____
CHARLES D. SUSANO, JR., JUDGE